BALKAN NATIONAL INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76608. Promulgated December 22, 1937.

*Allen H. Gardner, Esq.*, for the petitioner.
*John F. Greaney, Esq.*, and *Leslie H. Rushbrook, Esq.*, for the respondent.

### OPINION.

SMITH: As the record stands in this case there is a deficiency in income and profits tax due from the petitioner for 1918 in the amount of $83,709.57. The petitioner does not contest the correctness of the determination of the tax liability. It contends, however, that the assessment and collection of the deficiency are barred by the statute of limitations. This is its sole contention. As grounds for this contention it alleges, first, that the deficiency notice was mailed more than five years after the return for the taxable year was filed, and, second, that an assessment of tax was made more than six years prior to the mailing of the deficiency notice.

When the petitioner's properties were taken over by the United States, the United States took them as its own. *United States* v. *Chemical Foundation, Inc.*, 272 U. S. 1; *Krausz* v. *United States*, 14 Fed. Supp. 291. In the last named case the Court of Claims stated:

Plaintiffs' suit is based upon the claim that all of the provisions of the revenue laws with reference to assessment and collection of federal taxes together with all of the provisions with reference to refunds of taxes illegally or erroneously collected are applicable to their cause of action. We think that this theory cannot be sustained when the peculiar facts of the situation are considered in connection with the special statutes applicable.

The petitioner contends that, inasmuch as its properties during 1918 were in the custody of the United States, it was the duty of the proper officer having charge of the properties to make any required return for the assessment and collection of income and profits tax due for the year 1918; that pursuant to such duty the United States caused a return to be made by its agent, the Alien Property Custodian. It was held, however, in 32 Ops. Atty. Gen. 249, that the Alien Property Custodian was not such a trustee as was required by law to make income tax returns or pay income taxes; that he was merely an official

or agent of the Government. We are of the opinion that the return prepared by an agent of the Alien Property Custodian and filed with the collector of internal revenue, which was not sworn to by anyone, was not a return contemplated by the statute and that the filing of it gave no basis for the claim that time may be computed therefrom within which the respondent may assess and collect a deficiency in tax due from the petitioner.

As was pointed out by the Court of Claims in *Krausz* v. *United States, supra,* there is no statute of limitations with respect to the collection of tax due from alien enemies or allies of alien enemies whose property was seized by the Alien Property Custodian where no return was filed by such alien enemies, as required by the income tax law. The stipulation of facts in this case is that the petitioner has never filed an income and profits tax return for the year 1918.

In *Krausz* v. *United States, supra,* the Court of Claims stated, in answer to the plaintiffs' contention. that the general tax statutes, including the specific provisions relating to the assessment and collection of taxes, were applicable to aliens whose property was seized by the Alien Property Custodian, as follows:

\* \* \* This is clearly an erroneous conclusion. We have already shown that until the War Claims Act became a law the former owners of the property seized had no enforceable rights whatever therein, and when this act was passed they acquired no rights except those granted thereby. The War Claims Act made provision for the payment of taxes and the government having complete right to retain the property, none of the taxing statutes had any application except as specially stated in the act itself.

\* \* \* \* \* \* \*

We think the wording of subdivision (b) [Trading with the Enemy Act, as amended] requires that where taxes were due from the aliens whose property had been seized they should be computed and withheld without regard to the statute of limitations. If it should be conceded for the sake of the argument that the statute was ambiguous, the surrounding circumstances clearly show that such must have been the intent of Congress. This money or property was turned over purely as an act of grace. In so doing, the United States was not standing upon its war-time rights, but placed the matter on a moral and equitable plane highly favorable to the claimants. Having done this, it seems hardly conceivable that it was intended to turn this property back to the former owners without collecting taxes justly due from them. Our government was intending to do exact justice to the alien claimants, and it would exact no more than justice in requiring these taxes to be paid. Where the intent is manifest and the language ambiguous the intent must control.

This was likewise the ruling of the Board in *Helmuth Heyl,* 34 B. T. A. 223, in which the Board held that where no returns of income had been filed by or on behalf of the taxpayer for the years 1918 and 1921, during which time his property was in the custody of the Alien Property Custodian, the assessment and collection of a deficiency

determined by the respondent in 1935 were not barred by the statute of limitations.

The petitioner also makes the contention that, inasmuch as an assessment was made against it on the unverified return filed at the instance of the Alien Property Custodian in 1918, although the assessment was afterwards abated, no collection of a deficiency could be made more than six years after such assessment. It relies upon the provisions of section 278 (d) of the Revenue Act of 1924, which provides:

(d) Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

In support of its contention it cites *United States* v. *Updike*, 281 U. S. 489. In that case the Supreme Court held that where an assessment had been made against a transferor no suit for the collection of the assessment could be brought against a transferee after the collection of the tax was barred under section 278 (d) of the statute of limitations.

We are of the opinion that the ruling announced by the Supreme Court in the above entitled case is not applicable to the situation which prevails here. The respondent is not attempting to collect from the petitioner an assessment which was made against it. He is attempting to collect a tax liability which, so far as the record shows in the case, is legally due. His predicate for the proposed assessment is an income and profits tax return for the year 1918 prepared for the petitioner by the respondent under the provisions of section 3176 of the Revised Statutes on March 9, 1934. Since the petitioner filed no return for that year, we are of the opinion that the assessment was made within the time required by the applicable statutes. Cf. *Kahle* v. *Commissioner*, 43 Fed. (2d) 61; certiorari denied, 282 U. S. 892.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LEECH concurs solely on the authority of *Krausz* v. *United States*, 14 Fed. Supp. 291.